UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| PATRICK ADONIZIO, | } | Case No. 6:21-cv-144 |
| PLAINTIFF | } | |
| | } | COMPLAINT FOR DAMAGES |
| v. | } | 15 U.S.C. § 1692, et seq. |
| | } | Fla. Stat. § 559.55, et seq. |
| CREDIT CONTROL SERVICES, INC., | } | |
| d/b/a CREDIT COLLECTION SERVICES | } | |
| DEFENDANT | } | **JURY TRIAL REQUESTED** |

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

1. Plaintiff PATRICK ADONIZIO, through his attorney, brings this action to challenge the actions of Defendant CREDIT CONTROL SERVICES, INC., doing business as CREDIT COLLECTION SERVICES, for unlawful conduct in connection with debt collection activity.

2. The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA") was designed to protect citizens from such abuses perpetrated by debt collectors, like the ones described in this complaint, and to protect citizens like Plaintiff. "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id.* at § 1692(a)

3. After the U.S. Congress passed the FDCPA, the Florida state legislature decided it wanted to go even further to protect its citizens from the rampant abuses perpetrated by debt collectors. To this end, the Florida state legislature passed the Florida Consumer Collections Practices Act, Fla. Stat. §§ 559.55-559.785 ("FCCPA"). The FCCPA was designed to protect consumers from harassment like the

type described within this complaint, and to protect consumers like Plaintiff. "In the event of any inconsistency between any provision of this part and any provision of the federal act, the provision which is more protective of the consumer or debtor shall prevail." *Id.* at § 559.552.

4. Plaintiff makes the allegations below on information and belief, with the exception of those allegations that pertain to Plaintiff's personal knowledge.

## JURISDICTION AND VENUE

5. This action partially arises out of Defendant's violations of the Fair Debt Collection Practices Act (FDCPA), over which the U.S. District Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S. Code § 1692k, and *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), and Defendant's violations of the Florida Consumer Collections Practices Act (FCCPA), over which the U.S. District Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6. Because Defendant conducts business in the State of Florida and in this District by repeatedly contacting Florida residents and residents of this District while attempting to collect upon consumer debts, personal jurisdiction is established.

7. Because all tortious conduct occurred while Plaintiff resided in the City of Windermere, County of Orange, and witnesses are located within such location, venue properly lies with this court.

## PARTIES AND DEFINITIONS

8. Plaintiff is a natural person.

9. Defendant is a "debt collector" as such term is described by the FDCPA 15 U.S.C. § 1692a(6) because Defendant used instrumentalities of commerce within this state and District, the principal purpose of which is the collection of debts. Additionally or alternatively, Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. Plaintiff was allegedly obligated to pay a "debt," as such term is described by the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Fla. Stat. § 559.55(6), because he was allegedly obligated to

pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. Specifically, Plaintiff was allegedly obligated to pay money allegedly owed for medical laboratory work performed on him by Quest Diagnostics.

11. Plaintiff is a "debtor" and "consumer" as those terms are described by the FDCPA 15 U.S.C. § 1692a(3) because he was allegedly obligated to pay a debt.

## FACTUAL ALLEGATIONS

12. On July 16, 2019, Plaintiff went to Quest Diagnostics and had medical laboratory work performed on him. Between then and February 17, 2020, Plaintiff had a dispute with his insurance because Plaintiff believed his insurance ought to provide more payment coverage. Nevertheless, on February 17, 2020, Plaintiff, while still maintaining that his insurance company ought to be responsible for the payment, ultimately did pay Quest Diagnostics, out of pocket, the $93.31 outstanding balance in full that his insurance refused to pay.

13. On February 28, 2020, Defendant mailed Plaintiff a dunning letter seeking to collect on an alleged debt allegedly owed to Quest Diagnostics in the amount of $93.31 -- which Plaintiff already paid that eleven days prior to the date on the dunning letter.

14. Immediately upon receiving this first dunning letter, Plaintiff (and Plaintiff's wife) demanded validation of this alleged debt and additionally provided Defendant with actual knowledge that the alleged debt had already been paid and that Plaintiff no longer owed anything.

15. Nevertheless, Defendant mailed Plaintiff another debt collection letter on March 31, 2020, both demanding payment be made for an alleged balance owed of $93.31 that Plaintiff does not owe, and additionally stating that "This notice will serve as a Credit Reporting Alert that adverse credit information is scheduled to be reported to a credit bureau(s). To avoid credit reporting, your immediate attention is required." No such adverse credit information was reported between the date of this letter and the date of the next debt collection communication which was sent on April 29, 2020.

16. On April 29, 2020, Defendant finally responded to Plaintiff's demand for validation. However, in so doing, Defendant sent Plaintiff a letter stating:

> "Enclosed please find a copy of the document(s) you requested.  The above referenced amount is correctly stated.  Please remit payment at this time and/or contact this office for personal assistance."

The "above referenced amount" was listed as $93.31 – which Plaintiff had already paid directly to the original creditor months prior.

17. On May 1, 2020, Defendant mailed Plaintiff yet another debt collection letter – the fourth letter overall demanding payment.  This letter appears to be literally identical to the debt collection letter described in paragraph 16, above, with the sole difference being a different date (May 1, 2020 instead of March 31, 2020).  No such adverse credit information was reported between the date of this letter and the date of the next debt collection communication which was sent on June 12, 2020.

18. On June 12, 2020, Defendant mailed Plaintiff yet another debt collection letter – the fifth letter overall demanding payment.  This letter appears to be literally identical to the debt collection letters described in paragraphs 16 and 18, above, with the sole difference being a different date (June 12, 2020 instead of May 1, 2020 or March 31, 2020).  Unlike the last two nearly identical letters, this time Defendant did, in fact, actually report adverse credit information shortly thereafter.

19. At some point in June, 2020, Defendant finally did in fact submit trade lines to the credit bureaus containing derogatory marks surrounding this alleged debt and indicating that Plaintiff was in collections for it.

20. On June 15, 2020, Plaintiff and Plaintiff's wife received an e-mail from a home finance company they were working with, "Churchill Mortgage," who has a business relationship with "CIC Credit," concerning the new derogatory mark on Plaintiff's credit report:

> "Hello, Patrick and Cheryl, Hope you are doing well!

> *We did a mandatory credit soft pull and there is a new medical collection showed on your report. See below. According to our policy, a new credit report is required for us to proceed with the refinance.*
>
> *Please let me know by the end of today that you are ok with us pulling a new credit"*

(internal e-mail line break formatting removed for clarity).

21. On June 16, 2020, Plaintiff, Plaintiff's wife, Churchill Mortgage, CIC Credit, Quest Diagnostics, and Defendant had a conference call to discuss the derogatory trade lines discussed in paragraph 19, above.  During that call, Quest Diagnostics confirmed that Plaintiff had paid them the $93.31 months prior, that they did not owe anything, and that they should not be in collections for this alleged debt.  However, Defendant falsely and fraudulently reaffirmed Defendant's position that the debt was owed, unpaid, and that Plaintiff should pay Defendant.

22. As a result of the events described in paragraphs 19-21, above, Plaintiff lost his opportunity to refinance his current home (and otherwise engage in the housing market) from a position of strength; putting him and his wife into an inferior bargaining position, and forcing him to endure an economic loss and forgo the opportunity to make an economic gain, at a time when the housing market was in flux and ripe for lucrative investment due to the coronavirus.  Additionally, Defendant was provided actual knowledge of Plaintiff's desire and intent to refinance his current home.

23. On July 7, 2020, Plaintiff received a letter from Essent Guaranty, Inc. informing him that because of the derogatory trade lines discussed in paragraph 19, above, he was given worse rates on mortgage insurance than he would have otherwise been given if not for those derogatory trade lines:

> *"[...] The cost of your MI is based in part on your financial information, including your credit score.  Generally, the cost of MI increases as a person's credit score decreases.  As a result, even loans made to borrowers with good credit scores may be charged rates that are slightly higher than the rates charged to those with the very best credit scores.  When this happens, the FCRA requires us to provide you with this notice.  [...]*

> *Trans Union Fico Risk Score Classic 04 reported to us that the key factors that adversely affected your credit score were: [...] DEROGATORY PUBLIC RECORD OR COLLECTION FILED [...] LENGTH OF TIME SINCE DEROGATORY PUBLIC RECORD OR COLLECTION IS TOO SHORT [...]"*

24. As a result of Defendant's conduct described generally in the paragraphs above, Plaintiff suffered significant actual damages, including direct economic damages as well as physical damages involving headaches, stomachaches, heartburn, stress, irritability, difficulty maintaining or obtaining restful sleep, as well as suffering through watching his wife endure similar problems as a direct result of Defendant's conduct.

## FIRST CLAIM FOR RELIEF

**Defendant's violations of the FDCPA, 15 U.S.C. § 1692, et seq.**

25. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1-24, as if fully set forth herein.

26. By communicating with Plaintiff for debt collection purposes and falsely representing the character, amount, or legal status of a debt by attempting to collect an amount from Plaintiff that Plaintiff does not actually owe, Defendant has engaged in illegal practices in violation of the FDCPA, 15 U.S.C. §1692e(2)(A).

27. By communicating with Plaintiff for debt collection purposes and falsely threatening to take an action it did not intend to take, Defendant has engaged in illegal practices in violation of the FDCPA, 15 U.S.C. §1692e(5).

28. By communicating with Plaintiff for debt collection purposes and using false representations or deceptive means to collect or attempt to collect a debt or obtain information concerning Plaintiff, Defendant has engaged in illegal practices in violation of the FDCPA, 15 U.S.C. §1692e(10).

29. By communicating with Plaintiff for debt collection purposes that Plaintiff does not actually owe in the manner alleged by Defendant, Defendant has used unfair and unconscionable means to collect or attempt to collect a debt, including the collection of an amount not expressly authorized by an agreement creating the debt or permitted by law, and has engaged in illegal practices under the FDCPA, 15 U.S.C. § 1692f(1).

30. By communicating with Plaintiff for debt collection purposes despite Plaintiff notifying Defendant in writing that Plaintiff disputes the validity of the alleged debt, before actually providing Plaintiff with that validation or verification, Defendant has engaged in illegal communication in violation of the FDCPA, 15 U.S.C. § 1692g(b).

31. The FDCPA provides for actual damages and for statutory damages of $1,000.00 for violation of the statute, 15 U.S.C. § 1692k(a)(1-2).

32. The FDCPA provides for reasonable attorney's fees and costs in any successful action, 15 U.S.C. § 1692k(a)(3).

33. 15 U.S.C. § 1692k(a)(1-2) entitles Plaintiff to actual damages and $1,000.00 in statutory damages for Defendant's violations of the FDCPA, 15 U.S.C. § 1692 et seq., and Plaintiff is so entitled.

34. 15 U.S.C. § 1692k(a)(3) entitles Plaintiff to reasonable attorney's fees and costs upon successful prosecution of this action, and Plaintiff is so entitled.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendant and provides Plaintiff with the following relief:

(a) Actual damages in the maximum amount the court deems proper and may provide.

(b) Statutory damages in the amount of $1,000.00;

(c) Reasonable attorney's fees and costs;

(d) And any other relief as the court deems proper and may provide.

Plaintiff requests a jury for all claims so triable.

## SECOND CLAIM FOR RELIEF

**Defendant's violations of the FCCPA, Fla. Stat. § 559.55, et seq.**

35. Plaintiff repeats, re-alleges, and incorporates by reference paragraphs 1-24, as if fully set forth herein.

36. By communicating with Plaintiff for debt collection purposes and claiming, attempting, or threatening to enforce a debt when Defendant knows that the debt is not legitimate, Defendant has engaged in illegal practices in violation of the FCCPA, Fla. Stat. § 559.72(9).

37. The FCCPA provides for actual damages and statutory damages of $1,000.00 for violation of the statute, Fla. Stat. § 559.77(2).

38. The FCCPA provides for reasonable attorney's fees and costs in any successful action, Fla. Stat. § 559.77(2).

39. The FCCPA provides for a court to impose punitive damages and such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part, Fla. Stat. § 559.77(2).

40. Fla. Stat. § 559.77(2) entitles Plaintiff to actual damages and $1,000.00 in statutory damages for Defendant's violations of the FCCPA, Fla. Stat. § 559.72, et seq., and Plaintiff is so entitled.

41. Fla. Stat. § 559.77(2) entitles Plaintiff to reasonable attorney's fees and costs upon successful prosecution of this action, and Plaintiff is so entitled.

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment against Defendant and provides Plaintiff with the following relief:

(a) Actual damages in the maximum amount the court deems proper and may provide.

(b) Statutory damages in the amount of $1,000.00;

(c) Reasonable attorney's fees and costs;

(d) Punitive damages in the maximum amount the court deems proper and may provide;

(e) And any other relief as the court deems proper and may provide.

Plaintiffs requests a jury for all claims so triable.

Respectfully submitted this 21st day of January, 2021,

By Plaintiff's attorney: /s/ Nicholas Michael Murado
Nicholas Michael Murado
Florida Bar # 102769
Murado Law, P.A.
2010 S.W. 99th Avenue
Miramar, Florida, 33025
Telephone: 754-816-2196
E-mail: muradolaw@gmail.com