UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICK ADONIZIO,

        Plaintiff,

v.                                           Case No. 6:21-cv-144-JA-DAB

CREDIT CONTROL SERVICES,
INC.,

        Defendant.

---

## ORDER

Although the Supreme Court has cautioned that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), that indeed has occurred in this case. The parties resolved the merits of this Fair Debt Collection Practices Act action in March 2022 through an accepted offer of judgment that provided that the judgment to be entered "shall include reasonable attorneys' fees and costs incurred by Plaintiff as allowed by the Court pursuant to this offer." (Doc. 26-1 at 2). But both before and since then, the parties have been fighting about what amount of attorney's fees is reasonable. As explained in this Order, the Court determines that that amount is $8,895.00—far less than the $45,000.00 requested by Plaintiff.

## I.    Background

This acrimonious litigation began with a $93.31 bill for medical laboratory

work. (*See* Compl., Doc. 1, ¶ 12). Although Plaintiff apparently paid that bill, beginning in February 2020 Defendant repeatedly sent Plaintiff dunning letters attempting to collect payment from him. (*See id.* ¶¶ 13–18). Eventually, in June 2020, Defendant reported adverse credit information to credit reporting agencies, (*see id.* ¶ 19), and this inaccurate information allegedly affected Plaintiff's ability to obtain favorable rates on a mortgage and mortgage insurance, (*see id.* ¶¶ 22–23).

Plaintiff filed this lawsuit in January 2021 under the federal Fair Debt Collection Practices Act (FDCPA) and the Florida Consumer Collection Practices Act (FCCPA), both of which allow for recovery of actual damages, statutory damages of up to $1,000.00, and reasonable attorney's fees and costs. *See* 15 U.S.C. § 1692k(a) (FDCPA); § 559.77(2), Fla. Stat. (FCCPA). The Complaint alleged that Plaintiff had "suffered significant actual damages," (Compl. ¶ 24), including the higher mortgage-related costs.

The parties mediated the case on January 31, 2022, but did not resolve it at that time. (*See* Mediator's Notice of Impasse, Doc. 23). Two months later, Plaintiff accepted an offer of judgment from Defendant—after having rejected two other offers made since the mediation. (*See* Doc. 39-1). The accepted offer provided for entry of judgment against Defendant in the amount of $1,001.00 on the FDCPA claim, plus $1,001.00 on the FCCPA claim, plus $448.00 in actual damages—a total of $2,450.00 in damages— and provided that "[t]he Judgment

shall include reasonable attorneys' fees and costs incurred by Plaintiff as allowed by the Court." (*Id.* at 16).

The day after Plaintiff filed his Notice of Accepted Offer of Judgment (Doc. 26), the assigned magistrate judge ordered the parties to mediate the issue of fees and costs. (*See* Order, Doc. 28). But Plaintiff then filed a Motion to Amend the Court's Mediation Order (Doc. 29), seeking relief from the mediation requirement. [1]  A different magistrate judge granted that motion in part, scheduling a settlement conference to be held by her in lieu of mediation with a private mediator.   (*See* Mins., Doc. 32; Order, Doc. 34).   That settlement conference was held in May 2022, but the parties did not reach an agreement on attorney's fees during that two-hour proceeding. (*See* Mins., Doc. 37).

Plaintiff then filed his Motion for Attorney's Fees, requesting $39,990.00 in fees (133.3 hours at an hourly rate of $300 per hour) plus $1,481.10 in costs. (*See* Doc. 39). Defendant filed a Motion to Compel and Motion to Stay (Doc. 40), seeking an order requiring Plaintiff to produce his retainer agreement with Plaintiff's counsel and staying resolution of Plaintiff's motion for fees until resolution of the motion to compel.  Before the Court ruled on that motion,

---

[1] In that motion, Plaintiff requested that the Court either (1) remove the mediation requirement outright because the parties were not likely to reach an agreement; (2) require Defendant to cover the costs of the mediation; or (3) relieve Plaintiff, personally, of the obligation to attend the mediation and allow Plaintiff's attorney to attend alone. In support of the third form of requested relief, the motion stated in part, "Plaintiff himself has nothing to do with deciding the amount of reasonable attorney's fees and costs." (Doc. 29 at 3).

Defendant filed a Response (Doc. 42) to Plaintiff's fee motion; Defendant did not challenge the requested hourly rate but did contest the reasonableness of the number of hours claimed. Defendant also objected to all but $400.00—the court filing fee—of Plaintiff's requested costs. (*See id.* at 18–19).

Both motions were referred to the assigned magistrate judge, who issued a nine-page Report (Doc. 44) recommending a fee award of $6,000.00 and that the Motion to Compel and Motion to Stay be denied as moot. Plaintiff has filed Objections (Doc. 45)[2] to the Report, and Defendant has filed a Response (Doc. 46) to those Objections. Having conducted the required de novo review of those portions of the Report to which objection has been made,[3] the Court finds merit in some, but not most, of Plaintiff's objections. Accordingly, the magistrate judge's Report will be approved in part, and Plaintiff will be awarded more than the Report recommends.

## II.    The Report and Recommendation (Doc. 44)

As noted, the Report recommends a fee award of $6,000.00—significantly less than what Plaintiff requested. The Report explains that Defendant's challenges to Plaintiff's claimed hours focus on the evolution of the case and the fact that the maximum amount and the type of Plaintiff's damages changed

---

[2] With his Objections, Plaintiff submitted updated time sheets (through the filing of the Objections), requesting an additional $5,010.00 (16.7 hours x $300/hour) in attorney's fees. (*See* Doc. 45 at 10; Doc. 45-1 at 24–25). His total request is now for $45,000.00 in attorney's fees plus $1,481.00 in costs.

[3] *See* 28 U.S.C. § 636(b)(1).

shortly after suit was filed.  Specifically, in May or June 2021—four or five months into the suit—Plaintiff sold the house that was the subject of the "higher cost" mortgage allegedly caused by the FDCPA and FCCPA violations.[4]  Yet, Plaintiff did not disclose this turn of events—which stopped Plaintiff's actual economic damages from accruing further, leaving only de minimis actual damages plus statutory damages capped at $1,000.00 on each of the two counts—and Defendant did not become aware of it until seven or eight months later, at the January 31, 2022 mediation.  As the Report explains, Defendant thus argued that "the case was extended and complicated because Plaintiff and his counsel failed to advise of this significant change in the basis for the litigation," and Defendant urged "that the great bulk of attorney time spent after" the June 2021 home sale was "unnecessary and therefore unreasonable." (Doc. 44 at 6).

The magistrate judge agreed in large part with Defendant, concluding that "Plaintiff's failure to be forthcoming as to the fact [that after the home sale] the case concerned only essentially a de minimis damage claim undoubtedly interfered with the progress of the case."  (*Id.* at 7).  The magistrate judge noted

---

[4] The house was sold in either May or June 2021.  Plaintiff refers to the sale as having occurred in June, (*see* Doc. 39 at 2); Defendant identifies a date in May as the sale date, (*see* Doc. 42 at 3, 5, & 6; Doc. 42-2 at 2); and the magistrate judge's Report refers to the sale occurring in June, (*see* Doc. 44 at 6).  The Court assumes for the purpose of resolving the attorney's fee issues that the sale occurred in June 2021.

that "Plaintiff is not entitled to be compensated [f]or fees he incurred or time unreasonably devoted by his attorney in respect to" unnecessary proceedings. (*Id.*).

In the end, the magistrate judge concluded that considering the circumstances of the case, the reasonable number of hours expended by Plaintiff's counsel was 20—not the 133.3 claimed. (*Id.* at 8). The magistrate judge then multiplied 20 by the $300 hourly rate to arrive at a "lodestar" fee amount of $6,000.00. (*See id.*). The magistrate judge did not make any adjustments to the lodestar, nor did he address the items of Plaintiff's requested costs. The Report recommends entry of final judgment in Plaintiff's favor for $2,002.00 in statutory damages, $448.00 in costs—apparently a misreading of the offer of judgment's provision for $448.00 in actual damages—and $6,000.00 in attorney's fees, (*id.* at 9), for a total judgment of $8,450.00. The Report also recommends denying as moot Defendant's Motion to Compel and Motion to Stay. (*See id.* at 1). Plaintiff objects to the Report insofar as it pertains to his fee motion, but neither party has objected to the recommendation that Defendant's Motion to Compel and Motion to Stay be denied as moot.

## III.  Discussion

When a magistrate judge issues a report and recommendation on a matter, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.

§ 636(b)(1).  Here, having considered Plaintiff's Objections and Defendant's Response, the Court accepts some of the magistrate judge's findings and recommendations but rejects others.

Plaintiff asserts a laundry list of objections to the Report, but the Court finds merit only in:  (1) the objection to the Report's description of the amounts of costs and damages in the offer of judgment and (2) the objection to the Report's failure to allow any fees for litigating the amount of fees.  The Court will discuss, but rejects, Plaintiff's objections regarding the magistrate judge's computation of 20 reasonable hours.  Finally, the Court will analyze and resolve the parties' arguments over Plaintiff's request for $1,481.10 in costs, a task not undertaken by the magistrate judge.

### A.      The Report's Reference to the Offer of Judgment's "Actual Damages" Amount as "Costs"

Plaintiff first objects to the Report's statement that "Plaintiff filed a Notice of Acceptance of Offer of Judgment for $2,002.00[] *plus costs of $448.00*." (Doc. 45 at 1 (emphasis added) (quoting Report at 2)).  Plaintiff aptly notes that the reference to "costs of $448.00" "is inaccurate," (*id.*); the accepted offer of judgment provides for $2,002.00 in statutory damages plus $448.00 in *actual damages* (not costs), (Doc. 26-1 at 2).[5]  The parties did not resolve the issue of

---

[5] The Report repeats this error on the last page in its itemization of the components of the judgment that it recommends be entered.  (*See* Doc. 44 at 9).

costs in the offer of judgment, instead leaving that matter, along with the amount of reasonable attorney's fees, for determination by the Court. As acknowledged by Plaintiff, the magistrate judge apparently "misread" this portion of the offer of judgment. (Doc. 45 at 1). The Court will correct this misreading when directing entry of judgment.[6]

## B.   Failure to Award Fees for Litigating the Amount of Fees

Plaintiff also objects to the Report's failure to allow any hours for litigation of the fee amount. "[W]here attorney fees are allowed to the prevailing party by federal statute, the compensable fees include time spent litigating both the entitlement to and amount of fees incurred . . . ." *Wolff v. Royal Am. Mgmt., Inc.*, 545 F. App'x 791, 796 (11th Cir. 2013). The Eleventh Circuit has reversed statutory fee awards that do not include some amount for litigating the fee issue. *See, e.g.*, *Thompson v. Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1245, 1246 (11th Cir. 2003) (noting, in a case brought pursuant to 42 U.S.C. § 1981, that a district court "may not entirely deny civil rights litigants the recovery of statutory fees (which we have said includes fees for litigating fees)," and reversing for abuse of discretion where the district court provided "*no compensation* for the time . . . spent on the fee issue"). Because the Report does

---

[6] As explained later in this Order, however, the Court does not agree with Plaintiff that the magistrate judge's misreading of this part of the offer of judgment "is critical" or undermines the magistrate judge's thoughtful analysis of the course of the litigation or his determination of the reasonable number of hours expended in the litigation. (*See* Doc. 45 at 1).

not specifically provide for any time spent litigating fees, the Court will, as discussed later in this order, include compensation for some hours for that task.

## C.   Reasonable Hours

### 1.   *The Magistrate Judge's Determination of Twenty Hours*

The rest of Plaintiff's objections attack, in one way or another, the magistrate judge's determination of the reasonable number of hours expended by Plaintiff's counsel in this litigation.  But the Court finds no error in the magistrate judge's assessment that 20 hours—not including time reasonably spent litigating fees—is the reasonable number of hours for which fees should be awarded in this case.

In his Objections, Plaintiff repeatedly quibbles with the magistrate judge's description of the nature of Plaintiff's claims.  For example, in reaction to the Report's statement that "Plaintiff sold the property on which his damage claim was based," (Doc. 44 at 5), Plaintiff insists that "[t]here was no 'damage claim' in this case, per se," but instead the claims were "for debt collection violations . . . which include actual damages as one prong of total potential recovery."  (Doc. 45 at 2).  The Court is puzzled by Plaintiff's assertion here. Plaintiff clearly sought—and is obtaining through an accepted offer of judgment—damages in this case.  Indeed, when Plaintiff is not attacking the magistrate judge's use of the term "damages," Plaintiff himself repeatedly uses it in his Objections when describing the case, belying his misleading and plainly

inaccurate assertion that "[t]here was no 'damage claim.'" (*See, e.g.*, Doc. 45 at 2 ("Part of the potential recovery under the FDCPA and FCCPA is actual damages—in addition to statutory damages . . . . Plaintiff was actually damaged by Defendant.")).

Plaintiff continues his semantic attack about "damages" when he asserts error in the Report's statement that "[t]he case began and was litigated on the premise (as alleged in the Complaint) that Plaintiff's claim included decades of potential damages from a higher mortgage interest rate." (Doc. 45 at 3 (quoting Report at 6)).  Plaintiff contends that the Complaint "never discussed 'decades of potential damages' or any timeframe whatsoever." *Id.*  But even if a specific timeframe was not stated in the Complaint, Plaintiff's actual economic damages were alleged to have arisen from a mortgage, and in his fee motion Plaintiff describes the "30-year home mortgage" and claims that when he sold his home in June 2021, he "mitigate[d] part of his actual damages to only one year rather than the full 30 years." (Doc. 39 at 2).  The Court thus rejects Plaintiff's assault on the magistrate judge's quite accurate description of Plaintiff's initial assertion of his damages.

Plaintiff also objects to the Report's mention (in a footnote) of Plaintiff's Initial Disclosures becoming misleading once the house was sold. (*See* Report at 6 n.5 ("Plaintiff concedes that his Initial Disclosures, never amended or supplemented, sought damages based on the life of the mortgage.  That

assertion was materially misleading once the house was sold.")).  Although Plaintiff argues that "[t]his is inaccurate," (Doc. 45 at 4), Plaintiff did, in his fee motion, acknowledge the eventual inaccuracy of his Initial Disclosures, (*see* Doc. 39 at 5 ("The only thing that became (very slightly) inaccurate were the Initial Disclosures . . . .")).

Focusing on the same footnote of the Report, Plaintiff then asserts that the Report "is inaccurate" when it states that once Plaintiff sold his home, the "maximum recovery was statutory damages of $1,000 per count"—"a fundamental change in Plaintiff's claim itself, not a matter of 'mitigation' of damages." (Doc. 45 at 4 (quoting Report at 6 n.5)).  Plaintiff insists that his "claims never changed," just "the specific amount of actual damages" did.  (*Id.*). But the point being made in this footnote of the Report is that once the actual damages stopped accruing—damages that Plaintiff initially estimated at more than $100,000—the case fundamentally changed to one involving finite (and no longer increasing) actual damages plus $2,000 more in statutory damages.[7]

The Court also rejects Plaintiff's contention that the Report's erroneous reference to the $448.00 in the offer of judgment as "costs" rather than "actual

---

[7] Plaintiff makes similar arguments on the next page of his Objections, again challenging the Report's characterization of his damages as "no more than $1,000 per count" once the house sold.  (*See* Doc. 45 at 5 (quoting Report at 7)).  But these arguments profit Plaintiff none; the Report's characterization of what more was at stake once actual damages stopped accruing is accurate.

damages" undermines the magistrate judge's analysis of the case. The magistrate judge clearly understood that—as Plaintiff acknowledges—when the home was sold in June 2021, Plaintiff's actual damages ceased to accrue. (*See* Report at 5–6 (noting Defendant's argument that the home sale "reduc[ed] Plaintiff's] potential claim (due to higher interest costs) from many years to just a few months")). Although the Report does also mention that once the home sold "the possible recoverable damages were no more than $1,000 per count," *id.* at 7, the settled amount of actual damages was $448.00—a proportionately de minimis sum that does not affect the accuracy of the Report's description of the course of the case and the effect on the litigation of Plaintiff's failure to disclose the sale of the house.

And speaking of that failure to disclose, Plaintiff and his counsel continue to attempt to defend it, but those efforts fall short. Counsel refuses to state in his filings when he became aware of the sale. (*See, e.g.*, Doc. 45 at 5 ("As far as can be discerned, Plaintiff's counsel became aware of this fact at the same time Defendant's counsel became aware of this fact—during the first mediation.")). But emails between counsel seem to reflect that Plaintiff's counsel knew that Plaintiff moved out of state around June 1, 2021, though counsel maintained that he did not deduce from that fact that Plaintiff had sold the house with the at-issue mortgage. (*See* Doc. 42-2 at 2 (Plaintiff's counsel insisting in an email, "I've had clients in the past move to a new state while still keeping their house

in the original state . . . . I was never told they sold the house until mediation.")).

And even if Plaintiff's counsel did not know, Plaintiff certainly did, and he cannot expect Defendant to foot the bill for attorney hours expended unnecessarily because of his failure to disclose. *See, e.g., ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) ("Courts are not authorized to be generous with the money of others, and it is as much the duty of the courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded."). In sum, the Court agrees with the discussion in the Report regarding Plaintiff's failure to disclose the sale to Defendants and its prolonging effect on the litigation. *See, e.g., Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997) ("[A]ble counsel should aspire to achieve their client's objectives economically, and counsel should not expect to reap financial rewards for prolonging litigation unnecessarily." (citation omitted)).

Plaintiff also objects that the Report does not "include an analysis of the three offers of judgment issued by Defendant." (Doc. 45 at 6). Although Plaintiff is correct that the Report does not recount the history of the three offers of judgment, this omission is not significant and, if anything, that history cuts against, rather than in favor of, Plaintiff. On February 11, 2022—a week and a half after the mediation—Plaintiff's counsel wrote to opposing counsel advising that he had "been instructed not to accept any offers which does [sic] not cover attorneys [sic] fees and costs already incurred." (Doc. 40-1 at 3). Eleven days

13

later, on February 22, 2022, Defendant made its first offer of judgment to Plaintiff. That offer provided for entry of judgment against Defendant in the amount of $1,001.00 on the FDCPA claim, plus $1,001.00 on the FCCPA claim, plus $448.00 in actual damages—a total of $2,450.00 in damages—plus "reasonable fees and accrued costs incurred by Plaintiff up to and through the date of [the] Offer." (Doc. 39-1 at 3). Although this language seems to conform to Plaintiff's counsel's February 11 email, Plaintiff nevertheless "rejected this [offer], as Plaintiff did not wish to voluntarily waive the 'fees on fees' that he would otherwise be entitled to receive," (Mot., Doc. 39, at 4).

Defendant made a second offer of judgment six days later, on February 28, 2022. (Doc. 39-1 at 10–12). Like the first offer, the second offer provided for entry of judgment for total damages of $2,450.00, and Defendant also agreed in that offer to pay Plaintiff's accrued costs and reasonable attorney's fees totaling $7,550.00. (*Id.* at 11). Plaintiff rejected this second offer "on substantially the same grounds the last offer was rejected." (*Id.* at 14). Inexplicably, in his fee motion, Plaintiff characterizes this second offer as "not contain[ing] any provision for reasonable attorney's fees and costs at all," (Doc. 39 at 4), and in his Objections, Plaintiff refers to it as "taking away Plaintiff's ability to seek his fees and costs at all," (Doc. 45 at 6). Although Plaintiff may disagree with whether the amount offered was reasonable, the second offer specifically

14

allocated $7,550.00 for fees and costs, and Plaintiff's characterizations of it are misleading at best.

Defendant's third offer—the one that Plaintiff accepted—was made on March 30, 2022. (*See* Doc. 39-1 at 15–17). Again, it included the same damages amounts (totaling $2,450.00) as the first two offers and provided that "[t]he Judgment shall include reasonable attorneys' fees and costs incurred by Plaintiff as allowed by the Court." (*Id.* at 16).

It is clear from the record that Plaintiff continued to insist on specific language in the offer even though Defendant had included—in the first offer— the terms Plaintiff demanded on February 11.[8] Although Plaintiff asserts that "analysis of the three offers of judgment" supports his fee request, it does not aid Plaintiff's position.

Twice in his objections, Plaintiff asserts that the magistrate judge lowered the lodestar for improper reasons. (*See* Doc. 45 at 3, 8–9). But the magistrate judge did not adjust the lodestar—the mathematical product of the number of reasonable hours and the hourly rate—at all. The magistrate judge determined that the number of reasonable hours was 20 and multiplied that by the $300

---

[8] And although Plaintiff complains that Defendant caused him to incur more attorney's fees by pursuing discovery in March, (*see* Doc. 39 at 5), in the February 11 email Plaintiff's counsel stated: "I feel like this is a sticking point that will not be resolved by agreement. So, let's just set depositions and move towards MSJ practice." (Doc. 40-1 at 3).

hourly rate proposed by Plaintiff, resulting in a lodestar of $6,000.00—the amount the Report recommends awarding. Plaintiff's "lodestar adjustment" objections thus are not well-taken.

And Plaintiff's challenge to the magistrate judge's methodology in determining the number of reasonable hours is without merit. A court "should exclude from th[e] initial fee calculation hours that were not 'reasonably expended,'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoting S. Rep. No. 94–1011, at 6 (1976)), and, whether "trial or appellate, [the court] is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees," *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)); *see also id.* ("[W]here the time or fees claimed seem expanded . . . the court may make the award on its own experience."). Applying these principles and his extensive experience, the magistrate judge here explained the history of the case and determined that only 20 hours—rather than the 133.3 claimed—were reasonably expended in the case. The Report breaks down these 20 hours by task: 4 hours for pre-suit investigation and drafting; 5 hours for "[p]ost filing case management, Rule 26 disclosures and conferring with opposing counsel (through June 2021)"; 7 hours for discovery and communications through the January 31, 2022 mediation; and 4 hours' "[a]llowance for post mediation documentation of accepted offer." (Doc. 44 at 8).

The magistrate judge cogently explained his rationale and commented that even 20 hours "may be overly generous," noting that counsel spent fewer than 20 hours on the case through the time Plaintiff sold his house. (*Id.* n.6).

"If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *Norman*, 836 F.2d at 1304. This "does not mean that [the court] must exhaustively detail, hour-by-hour, what fees it excluded. The rule is more practical." *Walker v. Iron Sushi LLC*, 752 F. App'x 910, 913 (11th Cir. 2018) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)). An order on fees "simply must include sufficient detail to allow . . . meaningful review of the award." *Id.* (citing *Thompson v. Pharmacy Corp. of Am.*, 334 F.3d 1242, 1244 (11th Cir. 2003)). And Eleventh Circuit "decisions contemplate a task-by-task examination of the hours billed," *Barnes*, 168 F.3d at 429—the type of examination undertaken by the magistrate judge in the Report in this case. *Cf., e.g., id.* at 429–32 (concluding that the district court abused its discretion in not excluding as excessive some of the hours for the task of drafting complaint and, rather than remanding for the district court to exclude hours, reducing compensable hours for that task from 147.88 to 40).

Despite these principles and the Report's thorough explanation of the determination of reasonable hours, Plaintiff accuses the authoring magistrate judge of "fabricat[ing] a timesheet" and calls the Report's delineation (by task)

of twenty hours reasonably worked by counsel "wholly unacceptable." (Doc. 45 at 8). Plaintiff's counsel's disrespect for the Court—already apparent from the tone of the rest of the Objections—is palpable here. Counsel's word choices are completely uncalled for. It is not for counsel to decide or declare what is or is not "wholly unacceptable" when speaking of a judicial officer's work. And counsel's repeated use of the word "fabricate" is especially troubling. While the word does, in certain contexts, have a neutral or even positive connotation— such as when it refers to "constructing" or "manufacturing" a building or an object, *see Fabricate, Merriam-Webster's Collegiate Dictionary* (10th ed. 1993)— in the legal arena, it is most often used in its underhanded sense: "to make up for the purpose of deception," *id.*; s*ee also Fabricate, Black's Law Dictionary* (9th ed. 2009) ("To invent, forge, or devise falsely.").

Thus, what is "wholly unacceptable" here is Plaintiff's counsel's disrespectful and unfounded accusation against a member of the judiciary. Rule 4-8.2 of the Rules Regulating the Florida Bar prohibits lawyers from "Impugning Qualifications and Integrity of Judges or Other Officers." If the invective that Plaintiff's counsel used here in attacking the magistrate judge[9] does not violate this rule, it at least comes perilously close to doing so. And to what end? Ad hominem attacks are not persuasive to a reviewing court; in fact,

---

[9] The magistrate judge who authored the Report is greatly respected and widely recognized for his extraordinary competence and professionalism.

they have the opposite effect—to diminish the credibility of the one spewing insulting hyperbole.   But more importantly, such comments undermine confidence in the judiciary and the fair administration of justice.

Finally, Plaintiff's reliance on *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348 (11th Cir. 2008), in attacking the Report's methodology misses the mark.  The *Bivins* court did, as noted by Plaintiff, state that "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." 548 F.3d at 1350.  That court did so in the course of finding error in the district court's application of *both* methods to the claimed hours in that case: the district court had "engaged in an hour-by-hour analysis" and "found a certain portion of those hours to be 'reasonable,'" but it "then applied a further 35% across-the-board reduction in the requested hours." *Id.* at 1351.  In other words, the district court declared a number of "reasonable" hours, cut that number by 35%, and then called the resulting number "reasonable" as well.  This, said the Eleventh Circuit, resulted in improper "double-discounting" of the requested hours. *Id.* at 1352 & n.5.

In the case at bar, the magistrate judge engaged in no such "double-discounting," nor did he otherwise use an inappropriate method to determine reasonable hours.  The magistrate judge analyzed the case and the numerous

19

entries on the submitted timesheets,[10] explained which tasks were reasonable and necessary, and gauged—based on his experience and expertise—how many hours were reasonably spent on each task.  He thus engaged in a "task-by-task examination of the hours billed," *Barnes*, 168 F.3d at 429, and "include[d] sufficient detail to allow . . . meaningful review," *Walker*, 752 F. App'x at 913. Such methodology does not run afoul of controlling precedent as suggested by Plaintiff.

In sum, the Court finds no error in the Report's assessment of the number of fees reasonably expended in the litigation up until acceptance of the offer of judgment.  The Court will award 20 hours of fees as recommended in the Report.

### 2.   *Fees on Fees*

As noted earlier, Plaintiff's objection to the Report's failure to award any fees for time spent litigating the amount of fees is well-taken.  Under controlling precedent, Plaintiff's counsel is entitled to *some* compensation for litigating fees. *See, e.g., Thompson*, 334 F.3d at 1245–46.

---

[10] Plaintiff's counsel submitted twenty-three pages of timesheets along with the fee motion, and almost every page includes more than twenty entries.  The vast majority of the entries denote six-minute increments of time for sending or receiving emails to Plaintiff or opposing counsel, even when several were sent or received on the same day. (*See* Doc. 39-5). "'[E]xcessive, redundant, or otherwise unnecessary' hours should be excluded from the amount claimed." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 ((1983)).  This means that applicants for attorney's fees must "exercise 'billing judgment,'" and "exclude[] . . . those [hours] that would be unreasonable to bill to a client and therefore to one's adversary." *Id.* (first quoting *Hensley*, 461 U.S. at 437; and then quoting *id.* at 434).

The claimed hours for litigating fees are, of course, subject to review for reasonableness. Here, Plaintiff's counsel claims 44.1 hours after the March 30, 2022 Notice of Accepted Offer of Judgment (Doc. 26). Plaintiff has not summarized the number of hours spent on particular tasks, but the Court has examined and categorized the entries in the submitted timesheets (to the extent the entries are sufficiently specific to allow categorization). Plaintiff seeks compensation for, among other tasks: .9 hours for attending an April 27, 2022 Zoom hearing with the magistrate judge regarding Plaintiff's motion to dispense with mediation on the fee issue; 2.1 hours for attending the May 19, 2022 Zoom settlement conference with the magistrate judge; 14.3 hours for writing the fee motion; 6.7 hours researching and drafting a Rule 11 motion that was never filed; and 6.3 hours for writing objections to the magistrate judge's report.

Upon review of the timesheets and the record, not all of the post-March 30 claimed hours are reasonable for litigating the fee issue. *See, e.g.*, *Norman*, 836 F.2d at 1303 ("[W]here the time or fees claimed seem expanded . . . the court may make the award on its own experience."). First, 14.3 hours for drafting the fee motion is grossly excessive. The motion is eight pages long, and five pages of it consists of Plaintiff anticipating, and arguing against, "Defendant's Likely Opposition." (Doc. 39 at 2). The rest of the motion contains six paragraphs of basic principles of attorney's fee determination, assertions about Plaintiff's counsel's hours and hourly rate, and delineation of the requested costs. (*See id.*

at 6–8).  Upon consideration, the Court concludes that 2 hours will be allowed for this task; the additional 12.3 hours claimed will be excluded.

Similarly, 6.3 hours for drafting the Objections (Doc. 45) to the Report is excessive.  The Court will allow 2 hours for creation of that ten-page document, much of which—as discussed herein—nitpicks and rants about the Report in unproductive ways.

The Court will allow .75 hours for attendance at the April 27, 2022 Zoom hearing on Plaintiff's motion to amend the mediation order.  (*See* Clerk's Mins., Doc. 32 (noting that the hearing lasted 45 minutes)).  The Court will also allow 2 hours for attendance at the May 19, 2022 Zoom settlement conference required by the Court.  (*See* Clerk's Mins., Doc. 37 (noting that the settlement conference lasted an hour and 56 minutes)).  And the Court will allow an additional hour for counsel's work preparing an outline of the history of settlement negotiations and conferring with opposing counsel to prepare a draft/working settlement agreement in advance of the settlement conference as required by the settlement magistrate judge.  (*See* Order, Doc. 34, at 2–3).

In addition to those hours specifically allowed above, the Court will allow .5 hours (rather than the 1.2 hours claimed) for drafting the Motion to Amend Mediation Order (Doc. 29) and will allow the .4 hours requested for writing the Response (Doc. 43) to Defendant's Motion to Compel and Motion to Stay.  Aside from these hours, one additional hour (rather than the sum of the numerous .1

hours claimed) will be allowed for correspondence with opposing counsel and the client after March 30.

No fees will be awarded for time spent on Rule 11 research and drafting. Plaintiff has not established that these hours were necessary or reasonable.

The Court has reviewed all the time entries submitted, and to the extent not specifically mentioned herein, all other claimed time is excluded as unreasonable and excessive. The Court will award fees only for the 9.65 hours described above.

3.    *Total Fee Award*

In sum, the Court agrees with the magistrate judge's determination that Plaintiff's counsel reasonably expended 20 hours in this case, exclusive of time spent litigating the fee issue. And as set forth above, the Court awards fees for an additional 9.65 hours for litigating the amount of fees. This results in a total of 29.65 hours and a total fee award of $8,895.00 (29.65 hours x $300/hour).

**D.    Costs**

In his motion, Plaintiff requests $1,481.10 in total costs, which consists of: the $400 court filing fee; $46.10 to serve the complaint; and $1,035.00 for Plaintiff's half of the cost of the January 30, 2022 mediation. (*See* Doc. 39 at 8). Defendant contests all but the $400 filing fee. Although costs are typically taxed

by the Clerk at the conclusion of a case,[11] because the parties have already litigated the appropriate amount of costs in the motion (Doc. 39) and opposition (Doc. 42), the Court will resolve costs now and include them in the judgment.[12]

The court filing fee of $400—which is uncontested by Defendant—will be allowed. But the Court will not allow the $46.10 in service fees because Plaintiff has not established that he requested that Defendant waive service. *See, e.g.*, *Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 507–08 (5th Cir. 2004) (affirming denial of motion for costs of service where plaintiff did not establish that she requested waiver of service); *cf.* Fed. R. Civ. P. 4(d)(2) (providing that court must impose on defendant expenses incurred in making service if defendant refuses request for waiver of service). Nor will the Court allow Plaintiff's share of the costs of the January 2022 mediation; district courts in this circuit have, with approval of the Eleventh Circuit, declined to award mediation costs under the FDCPA because such costs are not allowed under the general costs provision, 28 U.S.C. § 1920. *See, e.g.*, *Embree v. Medicredit, Inc.*, 752 F. App'x 697, 700–01 (11th Cir. 2018) (finding, in FDCPA case, no abuse of discretion in district court's "looking to § 1920 and limiting the plaintiffs' award to costs taxable under that section," and declining to extend *Evans v. Books-A-*

---

[11] *See* Fed. R. Civ. P. 54(d)(1) (providing for taxation of costs by clerk and review of taxed costs by court upon motion).

[12] As noted earlier, the Report does not address the requested costs or Defendant's objections to them.

*Million*, 762 F.3d 1288, 1299–1300 (11th Cir. 2014)—an ERISA case in which mediation costs were awarded—to FDCPA cases).

In sum, the Court will allow $400.00 as reasonable costs.

## IV. Conclusion

It is **ORDERED** as follows:

1.     The Report and Recommendation (Doc. 44) is **ADOPTED** insofar as it accepts Plaintiff's proposed $300 hourly rate and concludes that the reasonable number of hours expended by counsel in this litigation was twenty—not including the time spent litigating the amount of fees and costs.

2.     Plaintiff's Motion for Attorney's Fees and Costs (Doc. 39) is **GRANTED in part and DENIED in part.** The motion is **GRANTED** to the extent that Plaintiff is awarded attorney's fees in the amount of $8,895.00 and costs in the amount of $400.00. Otherwise, the motion is **DENIED.**

3.     In light of Plaintiff's acceptance of Defendant's March 30, 2022 offer of judgment, this case is **DISMISSED with prejudice.**

4.     In accordance with this Order and the accepted offer of judgment, the Clerk is directed to enter a judgment providing that Plaintiff shall recover from Defendant the sum of $11,745.00, [13] plus interest from the date of

---

[13] This total sum consists of $2,450.00 in damages as agreed by the parties in the accepted offered of judgment, plus $8,895.00 in attorney's fees and $400.00 in costs as determined by the Court in this Order.

judgment, for all of which let execution issue.

5.      Defendant's Motion to Compel and Motion to Stay (Doc. 40) is

**DENIED as moot**.

6.      After entry of judgment, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida, on Janvary 3̄ , 202̄3̄.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Magistrate Judge
Counsel of Record